Our first case today is number 18-2258. Lester Barney versus the Administrator of New Jersey State Prison and the Attorney General of New Jersey. How do you pronounce it? Mr. Gerzog? Gerzog? Gerzog. Mr. Gerzog. It's entirely up to counsel if you wish to keep your mask on or remove it. You're welcome to do as you as you feel comfortable. Please. With the permission of the court, I'd like to reserve three minutes for rebuttal. Granted. Reserve three minutes. May it please the court, my name is Lawrence Gerzog and I represent Lester Barney. I did not represent Mr. Barney in any of the previous proceedings. Your honors, what this case is about is the denial of a right to Mr. Barney, which is a fundamental constitutional right, and that is the right to represent himself at trial. Mr. Barney's, the judge, Judge Homan below, incorrectly denied Mr. Barney's habeas petition for the reasons set forth in my brief and for the reasons that I'm prepared to discuss with the court now. Let's talk, there are two claims here. One of the claims is the Ferretta, the Superior Court's Ferretta ruling, and the second was ineffective assistance of counsel relating to Ferretta. Correct. So don't we have to take it as established that the court didn't receive this letter until August 10th, the eve of trial? Well, apparently the court did not, apparently the letter was date stamped in the judge's chambers on August the 10th. All right, and so it appears that the Superior Court found that and we have to defer to state court finds it effective and not unreasonable. Given that there's a stamp, don't we have to treat the letter as received on August 10th? I would say yes. And when did trial start? Was it the 10th or 11th? The 10th. Okay, so is it an unreasonable reading of Ferretta to say you don't have a right to assert this at the last minute? You know, cases like Ferretta have mentioned that you asserted the right with weeks to go. I have not been able to find clearly established federal law that says you have the right to assert it even as the trial is beginning. Well, I have two responses to that, Your Honor. The first is that with respect to especially the ineffective assistance claim, which I'll get to second, but Mr. Barney in the evidentiary hearing below told the court that he had asked his counsel on July 14th. Right, that's a matter for ineffective assistance. Okay, let's set that aside. I want to focus on whether the court violated Ferretta. Here's my response to that. First of all, while it's true that the court apparently did not receive the letter to August 10th, Mr. Barney mailed it on the 21st of July. And it's not, it can't be held against him that because he was in prison and because the post office apparently failed to deliver it to judges chambers for nearly three weeks, he did raise it in a timely fashion. It can't, it, only when he realized on August 10th that nothing had been done and the judge below came in, as Your Honors may remember from the record, holding the letter, waving the letter and very angrily telling Mr. Barney, I told you not to, I told you not to communicate directly with the court. You're represented by counsel. You know, this, this won't do. I haven't read the letter. Those things are what suggest the Ferretta violation here. Also, there's nothing in Ferretta, uh, while Your Honor is correct, that there's nothing in Ferretta that says you can raise this any old time. You know, you can raise this in the middle of the trial, for example. There's nothing in Ferretta that says you have to raise it a certain number of days before. You have to show a violation of clearly established federal law. And I'm trying to look for clearly established federal law that says you can raise it at the last minute because Ferretta mentioned in its facts that there was, this was weeks ahead of time. So what case clearly establishes that there's no time limit here? I have two responses to that, Your Honor. First, there's no, there's no, it, it, it wouldn't be reasonable to say that you'd have to have a case where the Supreme Court decided that one day or two days, three days was enough time. That's not the kind of issue the Supreme Court is going to decide. But what I'm saying is Ferretta could be read as having no time limit, or Ferretta could be read as having a, well, it was weeks ahead. Is there anything beyond Ferretta that suggests we should adopt the, it can be raised even close to trial reading? There's no Supreme Court precedent which says it can be raised. Is there third circuit precedent that you've found? Uh, there, in, in our brief, we allude to certain third circuit cases, but that wouldn't even, to be frank with the court, uh, the, the, it's Supreme Court precedent that the court has to be concerned with. Right, right. Clearly established federal laws determined by the Supreme Court of the United States. Right, right. So, however, we don't have that. However, uh, that only speaks to, uh, D1 of the, uh, 2254 statute. Okay. D2, uh, refers to whether, and I quote, uh, the decision below resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Would you say that the denial was based on an unreasonable determination of the facts if the clearly established law doesn't turn on any such factual finding as to, to, to timeliness? Well, what I would say about that, Your Honor, is that, uh, the determination of the court below was that Mr, uh, Barney's letter was not, uh, clear and unambiguous. It wasn't so much, uh, it, it, their, their statement was sort of in passing. Oh, and by the way, this was made, uh, you know, early, you know, this was made, uh, at the, on the eve of trial. First of all, it wasn't made on the eve of trial. It was made on July 21st as with pretty much everything in the law. The court is charged with knowledge of it as of August 10th. But that's not Mr. Barney's fault. There's no way Mr. Barney could have communicated to the court, uh, you know, Mr. Barnett and we'll get to the ineffective in a minute, but Mr. Barney told his counsel on July 14th. That's, that's part of the ineffectiveness claim. Yes. But the reason Mr. Barney, uh, having told his counsel that and having heard nothing on July 14th or subsequently about a what would have to happen, he then wrote on July 21st and that's the date that the court should consider, not, not the date of August 10th. And in, in any event. Let's assume that we disagree with you as to the court. Okay. Then you have to focus on ineffective assistance. I can. Now, we, you have to show both deficient performance and prejudice here. Under Weaver versus Massachusetts, how can you show prejudice? First of all, can you show, if you have to show case specific prejudice, can you, or is your whole argument based on this being structural such that no case specific prejudice is required? Uh, first of all, we do rely on the fact that this is structural error. Uh, second of all, to be quite frank, if they're required, if it's required that a request for self-representation or the denial of a request for self-representation show prejudice, then there is no such thing as, as the right to, uh, self-representation. You can, you cannot make a showing of prejudice in this case. Specific prejudice. I can't make a showing because it's, it's, there isn't anything I can say that Mr. Barney, being a, a layperson, would have done a better job at trial. And, and, but the problem is, is one can never say that. Well, what do we do with Weaver though? Because Weaver was a case where the same thing was true of the right to public trial, right? You can't show individualized prejudice there. If it had been on direct appeal, plain error, you would have prevailed. But because it was on habeas, the court, and through the lens of an IAC claim, the court said, nope, you've got to show prejudice because this is not one of those claims that goes to fundamental reliability. Like if it's a reasonable doubt instruction, that might be different. But this is public trial. Well, the court mentioned FERRETA among the other rights that are out there, and FERRETA is not a fundamental reliability. It protects a different value, client autonomy. So why shouldn't we apply the Weaver rule equally to FERRETA rights? Well, because I think fundamentally there's a fundamental difference between the right to a public trial and the right to represent yourself. The right to a public trial, while very important, doesn't really have an impact on the outcome of the trial. It involves other rights, other important rights that the government not hold trials in secret and have everything be open to the fresh air of public opinion or public notice. But here, where it's a right like self-representation, there isn't any other way to look at this other than to say prejudice, specific prejudice, is not that is inherently prejudicial. Well, it's inherently structural, right? But I don't know that it's inherently prejudicial. Because I get it's totally inherently structural. But prejudicial seems to suggest that you would be worse off, right, if you would have got the outcome that you wanted. And we don't have anything in the record that says Mr. Barney would have been, is worse off because he was represented by counsel. Well, I can't imagine anything, if the right to represent yourself is meaningful at all, I can't imagine a situation in which a defendant could prove that his representation of himself would have been better. And we're all familiar with the So if that's the case, then how do you ever preserve that? Well, I mean, your client thinks that he could have got access to a bunch of discovery, like a forensic pathologist, all these other things. I mean, he could run with each one of the arguments for why he wanted a new counsel, why he wanted to represent himself. He could say, if I would have represented myself, I would have insisted on a forensic pathologist. I would have insisted on discovery from the overseas. Well, he raised those issues in the Tavius petition, and Judge Holman dismissed them as not being fit. But that, at one level, suggests that there would be, if those were more appropriate issues, then there would be a possibility of prejudice. I don't know, Your Honor, that that's the case. I think that the fact that the right to represent yourself is structural and is, you know, one of the most fundamental rights, such as the right to testify on your own behalf. If a lawyer, you know, refused to let his client testify or weighed in so hard on his client that the client felt that he had no right to testify, it would be difficult for the court, rather for the client, to show that his failure to testify would have changed the outcome. But he's entitled to testify. So basically what you're saying is, although we know that not all structural errors are prejudicial, you believe that there's a subset of structural errors that are inherently prejudicial and that this is one of them. Well, what we have, really, on the issue of structural errors not being prejudicial, is the one case that Judge Bibas pointed out, which involves a right that I think we can all agree is not the same kind of right, the right to an open public trial. The lawyer had a typology in which it divided different kinds of structural errors. There are some structural errors that are about fundamental reliability. If you've got a defective reasonable doubt instruction, you could get an innocent person convicted. That's, like, the core of reliability. But then there are other structural errors that have been talked about, whether you filed an appeal, whether you got to go pro se, whether you had a public trial, whether there was race discrimination in the grand jury, that, you know, whatever happened at the grand jury doesn't affect what happens at the trial. And so we can say banning race discrimination is a very important thing, but it's not the same as convicting an innocent person. Well, what if the issue was race discrimination in the petit jury? In the petit jury, that could go to reliability. In a case involving race, you might be able to show that it affected the outcome of the trial. How would you do that, Your Honor? You can't. It would require a presumption that people of one race are more or less likely to the government could always rebut that by saying there was a lot of evidence. The point is, you can't show that there's any tendency to make this conviction, unreliable conviction, more likely. Indeed, you conceded that there are persons going to. So this is about a value other than fundamental reliability. And Edwards put that in a different basket from the reliability rights. What I'm saying is that the right to represent yourself is so fundamental that it should be, this court should hold. And there's no holding to the contrary. And I disagree with Your Honor that just because the court in that Supreme Court case said that the right to an open trial was not, could not, they were unable to show prejudice there. That means that in this case, the fact that there's no direct, obvious prejudice in the sense of, you know, as Judge Phipps said, he didn't introduce this evidence or that evidence or whatever. It's my representation or my feeling that it is that fund, that kind of fundamental right. Yes. Thank you, Your Honor. May it please the court assistant Burlington County Prosecutor Jennifer Paskowitz on behalf of appellees. How do you pronounce your last name? Paskowitz. Paskowitz. Yes. Thank you. As to ground one, the Feretta issue, the New Jersey Law Division properly concluded that defendant's request for counsel was not clear and unequivocal. I understand Judge Hellman disagreed and appellees just simply feel that that was not an appropriate finding on the record. All right. Let's take a look at Appendix 88, this letter. So the first paragraph on its own might be equivocal. At my hearing, I informed the court if I had to choose between receiving and reviewing my discovery and having my pool attorney, I'll choose the discovery. So that's an if. That's conditional. What I want you to do is explain to me how the second and third paragraphs can be equivocal. On July 14th, 2005, after my hearing, I informed my pool attorney that I will proceed on a capital pro se basis. The pool attorney told me he would inform the court that a hearing would be scheduled early the following week. Since it's now Thursday, July 21st, and no hearing has been held, I'm not sure the court is aware that the defendant will go forward capitals pro se. This letter is to inform you of that fact. What's equivocal about that? When considering the surrounding circumstances, as Feretta and its progeny require the courts to do, it's not. I understand the language. I acknowledge the language. I think it's important to note, first of all, that this is one paragraph out of a multi-paragraph. The next paragraph starts with acting now capitals pro se. And again, returns respectfully to the issue of discovery. That's an ongoing issue with Mr. Barney. But in this letter is an ongoing issue with him when they are in court on July 14th preceding this. And I realize that these are issues that were fleshed out after the fact because subsequently the New Jersey Supreme Court, after the PCR was conducted, remanded for an evidentiary hearing. Trial counsel denies recalling any conversation with counsel and that the trial and Judge Almeida made clear to the defendant that he hadn't read this letter because he had already told defendant to stop writing directly to him because he was represented. So can I just chime in on these paragraphs? Because I understand the operative phrase is clear and unequivocal request, right? So clear and unequivocal are modifiers of the term request. So Judge Bibas asked you about the second and third paragraphs. Is there anything in either of those paragraphs that you could construe as a request? Not from the State's, excuse me, from Appellee's perspective, and that's part of the problem. He says, I inform my pool attorney. He never filed a motion. He never asked, indicates that he asked counsel to file a motion. He says, I told him that I'm going to proceed pro se. Oh, and the court must be aware of it. What was also before Judge. So let me just, if a person makes a clear and unequivocal statement that they're proceeding pro se, should that be viewed as sufficient to trigger Ferretta, or are we going to say that the only way that you can trigger Ferretta is to make a request? I would say that case law certainly says there's no specific talismanic phrase the defendant has to say. But Appellee's would submit that it has to at least be in the form of a request to the court, whether it's a motion filed, whether it's raised before the trial court. I don't think we should require someone who is not a lawyer to file something in the form of a motion, and that saying this letter is to inform you of that fact, that the defendant will go forward pro se. Let's say we think that's crystal clear. Please accept the premise of my question. Why do you think you would still win on the Ferretta claim, even if we read the letter that way? I'm sorry, as a request? If we read it as an unequivocal request, can you still win claim one? We do. Your Honor touched upon it, and a big part of that is the timeliness issue, an issue that also is significant in this case. This case eventually really comes back to what so many do, which is credibility. And, you know, counsel urges that Mr. Barney must have put this letter. He dated it January 21st. He must have put it in the mail on January 21st. July 21st. I'm sorry, July 21st. Judge Almeida's chambers stamped it received August 10th. They were in court on August 9th. I'm not sure there would be any reason to believe that that would have been misrepresented by the court or if he had the letter before that date. Okay. Let's assume that timing gets you out of the first claim, the Ferretta claim. It doesn't appear to get you out of the IAC claim because, you know, the defense lawyer's recollection is somewhat vague. Like, okay, you know, I read the letter, and, yeah, I did read it. And if we think it's crystal clear, then the lawyer was deficient in not asking for this hearing that his client said, my lawyer told me he'd inform the court there'd be a hearing. So there's no question the lawyer didn't do that. If the letter's crystal clear, isn't that deficient performance not to ask for a hearing? Under prong one of Strickland? Under prong one. If Mr. Riley interpreted it that way, and he references the fact, and there's quite a bit of testimony. He didn't interpret it that way. Right, he did not. But maybe it was objectively unreasonable for him not to read it that way. Well, nevertheless, and the court touched upon this with my adversary, the bottom line from the state's perspective and Weaver and Perella versus Horn is that although defendants alleging a structural error viewed through the lens of the ineffective assistance of counsel framework, defendant has not demonstrated prejudice. In fact, he hasn't alleged specific prejudice. This was a very significant case. The state's proofs were extremely strong. I don't think that's something that's been disputed, nor has really the qualifications of trial counsel at the evidentiary hearing. And even in some previous transcripts where Mr. Barney is taking issue with counsel's rejection of some of his suggestions, you know, and I apologize, it might have been, Your Honor, Judge Phipps who referenced the fact that there was this request for a forensic pathologist. Even before trial, Judge Almeida, I believe it was in the July 14th transcript, references, tries to address some of these things with Mr. Barney. He's clearly frustrated with him, but he tries to allay some of his concerns. And the assistant, you know, he asks the attorneys, is there a question as to cause or manner of death? And the answer is no. I mean, the victim was almost decapitated in this case. So some of these things that defendant didn't specifically assert perhaps on habeas, asserted below, asserted on direct appeal where errors, asserted on piece error where errors, are not. He had the representation of a defense attorney with almost 40 years of experience, practiced primarily in criminal law, had practiced in numerous significant cases, nine or 10 death penalty cases as a defense attorney, had been the first assistant prosecutor in Burlington County. Given the facts of the case, given the record, and given the fact that every other claim defendant has raised on direct appeal, motion for post-conviction relief, appeal though from, and before Judge Hellman on habeas, he simply is unable to demonstrate prejudice. And appellees would of course disagree that the constitutional right discussed in Weaver is different than the constitutional right here. A structural error is a structural error. I can't imagine wanting to get into categorizing which ones are more significant and less significant. Perella v. Horn, a case from this court, also discussed the issue of structural error, excuse me, in the context of waiver of the right to jury trial and ineffective assistance of counsel. And the court said the term structural error carries no talismanic significance because the defendant cannot show a reasonable probability of a different outcome or that the error was so serious to render his trial fundamentally unfair. And that really is the issue here. The defendant not only has been unable to show that, but hasn't articulated anything specific that would have undermined the outcome. And the reality is, certainly from appellee's perspective, this appears to be one of these cases, not suggesting a counsel's institution, but at Mr. Barney's, where this occurred. But Mr. Barney also sat silent. A defendant who was not silent during all the pretrial proceedings at sentencing, did not hesitate to criticize the pre-sentence report, did not hesitate to speak up as to how he felt about the state's sentencing memorandum, who has been extremely participatory on direct appeal, filing supplemental briefs on post-conviction relief, testified at trial. I mean, perhaps one of the most significant things is what Mr. Barney wanted to do was put his story out there. And he did that, he testified as to this issue of self-defense, which was the defense he wanted to assert. It's not to diminish the significance of the structural right to represent oneself. It's almost impossible for appellees to imagine how, in this case, the trial was rendered fundamentally unfair by the representation Mr. Barney received. Okay. Do Your Honors have any more questions? Thank you. First of all, Your Honors, the facts of the crime itself are totally relevant here. And my adversary in raising some of the gruesome facts... Well, they wouldn't be relevant. They're not relevant in terms of prejudice in that this is not a harmless error type of situation. All right. Because you conceded this is not a case in which you have to prove prejudice. Am I right in understanding that? It is more accurate to say that it is fundamentally prejudicial. There is not a specific... Inherently prejudicial. As Judge Phipps pointed out, it is not a matter of not calling witness A or not calling witness B. I believe it's inherently prejudicial, but you can't prove case-specific prejudice. I cannot show the court that if Mr. Barney had represented himself, there would have been... There was a high probability of a different result. Or even a reasonable probability. Now we're getting into an area of why wouldn't there have been, except for the fact that Mr. Barney is not a lawyer. So as I said before, under those circumstances, there can never be prejudice shown. How about Ms. Peskowitz's point that your client was ordinarily very voluble? He spoke up for himself, then he was silent, he didn't say anything to the court. I appreciate that question in particular. On page four of my brief, we quote what the trial judge said when Mr. Barney started to speak up on July 14. Your lack of any appreciable training in this area, Mr. Barney, leads me to conclude that you should not be representing yourself, which is what, in essence, even though you haven't asked for self-representation, you don't intend to proceed pro se.  But your lack of training in this regard, et cetera, et cetera, which is why your application should go through your attorney. The judge made it crystal clear, and then again on October 10, when he came out angrily waving the letter, and there's no dispute that that's what happened, saying, I told you not to speak to me directly, I told you not to contact me directly. And at that point, what is Mr. Barney meant to do? Is he meant to just stand up and say, I don't care what you're telling, directing me, judge? This is the judge that, if he's convicted, is going to sentence him. Is it reasonable to ask him to, in the face of that kind of pressure from the judge, stand up and say, I demand this right, which, you know, he knows he has the right to represent himself. He doesn't know what a Faretta hearing is. And, you know, was it Shakespeare that says they, Shaddaf protest too much? I find this very interesting, that, you know, on the one hand, the courts below are saying that no one understood that Mr. Barney wanted to represent himself. Well, then why did the court say, it leads me to conclude that the judge essentially makes a Faretta ruling, or what sounds very much like a Faretta ruling, without there being any kind of Faretta hearing. And the judge is making it on the basis that Mr. Barney is not a lawyer. But that's not the point of a Faretta hearing. The point of a Faretta hearing is, do you understand what rights you're giving up by asking to represent yourself? And are you competent? And obviously he's competent because the trial went forward. And so the, my point is that the judge is bending over backwards to talk about why Mr. Barney isn't representing himself. But then the records, you know, the trial, rather the courts below, the New Jersey courts, are saying, well, it was never clear that that's what. Well, we have to defer. We have a deferential standard of review on these facts here. Only if it was reasonable, Your Honor. Only if you don't, only Judge Hillman could have and should have found that the court below was unreasonable in making the finding that this was not a clear and unambiguous request for counsel. Thank you.